UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FLAVIO LEMA, MANUEL ZUMBA, ZUMBA
SUMBA and CHRISTIEN PINEDA,

        Plaintiffs,

v.

MUGS ALE HOUSE BAR and EDWARD
BERESTECKI,

        Defendants.
-------------------------------------------------------------------X

Civil Action No.:
12-CV-02182 (ENV)(JO)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

*Of counsel*
Joseph M. Labuda
Ira Wincott

MILMAN LABUDA LAW GROUP PLLC
\*   \*   \*   \*
3000 MARCUS AVE., SUITE 3W8
LAKE SUCCESS, NY 10042
(516) 328-8899

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STANDARD...................................................................................................................................1

FACTS ...........................................................................................................................................2

ARGUMENT..................................................................................................................................3

POINT I
LEMA WAS EMPLOYED IN A BONA FIDE EXECUTIVE CAPACITY...........................3

CONCLUSION.............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)..........................................................................................................................1
Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1113-14 (9th Cir. 2001)................................7,8
Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008).........13
Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2173, 183 L. Ed. 2d 153 (2012)..............................................................................................4
Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982).........................................7
Gordon v. Rite Aid Corp., 2012 U.S. Dist. LEXIS 54071 (S.D.N.Y. Mar. 9, 2012) ......10, 11
Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714, 106 S. Ct. 1527, 89 L. Ed. 2d 739 (1986).........................................................................................14
Indergit v. Rite Aid Corp., No. 08-CV-11364 (PGG), 2010 U.S. Dist. LEXIS 32322, at *14-15 (S.D.N.Y. Mar. 31, 2010) ..........................................................13
Jackson v. Advance Auto Parts, Inc., 362 F. Supp. 2d 1323, 1328, 1335 (N.D. Ga. 2005)....6
Johnson v. Big Lots Stores, Inc., 604 F. Supp. 2d 903, 908 (E.D. La. 2009)........................13
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).............................................................................2
Mullins v. City of N.Y., 523 F. Supp. 2d 339, 357 (S.D.N.Y. 2007) .......................................7
Jones v. Va. Oil Co., 69 Fed. App'x 633, 637 (4th Cir. 2003).................................................6
Perez v. RadioShack Corp., 386 F.Supp.2d 979, 989 (N.D. Ill. 2005)..................................11
Pippins v. KPMG LLP, 2012 U.S. Dist. LEXIS 173918, 62-64 (S.D.N.Y. Nov. 29, 2012)...4
Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 560 (2d Cir. 2012)...........................10
Ramos v. Baldor Specialty Foods, Inc., No. 10 Civ. 6271, 2011 U.S. Dist. LEXIS 66631, 2011 WL 2565330, at *5-7 (S.D.N.Y. June 16, 2011) .......................................................5
Rubery v. Buth-Na-Bodhaige, Inc., 470 F. Supp. 2d 273, 277 (W.D.N.Y. 2007).................11
Scott v. SSP Am., Inc. 2011 U.S. Dist. LEXIS 32819 at 23, 24 and 47-48 .............5, 6, 11, 12
Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997))..................................................................................................................................2
Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)...............................................................2
Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) ........................................................1
United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962))....2

**Statutes**

Civ. P. 56..................................................................................................................................1
Fed. R. Civ. P. 56.....................................................................................................................1
29 C.F.R. § 541.105 ...............................................................................................................14

## PRELIMINARY STATEMENT

Defendants, Edward Berestecki and Mugs Ale House (collectively "Defendants"), respectfully submit this memorandum of law in support of their motion for partial summary judgment under Fed. R. Civ. P. 56.

Plaintiff Flavio Lema ("Lema") contends that Defendants have failed to pay his overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). However, Lema was not entitled to overtime pay since under the "executive exemption", he was exempt as a manager. Lema was employed in an exempt position earning a salary of between $720 and $790 per week and not entitled to overtime. Specifically, Lema was employed at Mugs Ale House as the manager of the kitchen. He was in charge of the entire kitchen department that consisted of approximately 4 full-time employees. Accordingly, Lema was an exempt employee who was properly paid a weekly salary without any overtime pay required.

Based on the evidence presented by both sides, it is clear that there is no issue of material fact and judgment should be entered in favor of Defendants as to Lema's claims. Therefore, Defendants' motion for partial summary judgment must be granted.

## STANDARD

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute such that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, the Court

1

should only grant summary judgment "on the basis that no genuine issue remains for trial because it is quite clear what the truth is." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009) (internal quotation marks and citations omitted). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)); see also Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) (stating that "[i]n determining whether there are genuine issues of material fact, we are 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought'") (quoting Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997)).

Here, as discussed below, it is clear that no issues of material fact exist which warrant the granting of Defendants' motion for summary judgment.

## FACTS

In or around 1999-2000, Lema was hired by Mugs, a bar and restaurant. In or around 2003, Lema was promoted to the kitchen manager at Mugs. There was always a separate manager of the "front of the house" (bar area) as opposed to the "back of the house" (kitchen).

As kitchen manager, Lema was in charge of running all aspects of the kitchen department. This included hiring and firing employees, paying employees, scheduling kitchen employees, maintaining inventory, training employees, directing employees and reporting broken equipment to Ed Berestecki ("Berestecki"), the owner, or repairing the

equipment on his own. He was also involved in setting the menu and deciding price points for menu items. Further, he was responsible for supervising the kitchen employees (approximately four (4) in total at any given time).

Throughout his employment, Lema had authority to hire and fire employees for the kitchen, discipline employees, and recommend either discipline or hiring and firing of employees in his department. Such recommendations were utilized by Mugs' owner, including when Lema recommended that Cesar by fired for poor performance. On most, if not every, occasion, Lema hired employees on his own.

Mugs initially paid Lema $720 weekly in 2007, then $750 weekly in 2008, and $790 weekly from 2009 until 2011. Lema worked the following hours as the manager of the kitchen:

| Monday: | 4 p.m. – 12 a.m. |
| Tuesday: | off |
| Wednesday: | 4 p.m. – 12 a.m. |
| Thursday: | 4 p.m. – 12 a.m. |
| Friday: | 3:30 p.m. – 1 a.m. |
| Saturday: | 10:30 a.m. – 1 a.m. |
| Sunday: | 10:30 a.m. – 5:30 p.m. |

Lema worked a total of fifty five (55) hours per week.[1]

## ARGUMENT

### POINT I
### LEMA WAS EMPLOYED IN A BONA FIDE EXECUTIVE CAPACITY

To qualify for the executive exemption, (1) an employee must be compensated on a salary basis at a rate not less than $455 per week; (2) an employee's primary duty must be managing the enterprise, or managing a "customarily recognized department or

---

[1] A full recitation of the facts concerning Lema's employment with Defendants is included in Defendants Rule 56.1 Statement of Material Facts.

3

subdivision of the enterprise"; (3) the employee must "customarily and regularly direct the work of at least two or more other full-time employees or their equivalent"; and (4) the employee "must have the authority to hire or fire other employees" or that employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight." 29 C.F.R. § 541.100(a) (2004). One recent court aptly analyzed the Supreme Court's explanation as to why Congress chose to exempt certain classes of employees from the FLSA's overtime requirements:

> The exemption is premised on the belief that exempt employees "typically earned salaries well above the minimum wage" and enjoyed other benefits that "se[t] them apart from the nonexempt workers entitled to overtime pay." It was also thought that exempt employees performed a kind of work that "was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime premium." Petitioners—each of whom earned an average of more than $70,000 per year and spent between 10 and 20 hours outside normal business hours each … are hardly the kind of employees that the FLSA was intended to protect ...

Pippins v. KPMG LLP, 2012 U.S. Dist. LEXIS 173918, 62-64 (S.D.N.Y. Nov. 29, 2012) (citing Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2173, 183 L. Ed. 2d 153 (2012) (quoting 69 Fed. Reg. 22124) (other internal citations omitted)). This is the exact premise that applies to Lema.

In the instant case, as discussed in detail below, there is no doubt that Plaintiff was employed in a bona fide executive capacity.

i. **Lema was compensated on a salary basis at a rate not less than $455 per week**

4

In the instant case, there is no doubt that Lema meets the first prong of the exemption test. In order to enjoy the executive exemption, an employer must pay a salary of at least $455 per week. Ramos v. Baldor Specialty Foods, Inc., No. 10 Civ. 6271, 2011 U.S. Dist. LEXIS 66631, 2011 WL 2565330, at *5-7 (S.D.N.Y. June 16, 2011) (quoting 29 C.F.R. § 541.100(a)(1)).[2]

Here, Lema readily admits that he was issued a weekly salary of $720 in 2007, $750 in 2008, and $790 from 2009 through 2011. He was, in fact, paid for all weeks during his employment. Moreover, his salary did not change depending on how many hours he worked (which as mentioned above was regularly fifty five (55) hours per week). Therefore, this prong of the executive exemption has been satisfied.

### ii. Lema's primary duty was to manage the kitchen

Lema's primary duty was to manage the kitchen, which is undisputed based on the testimony of all the plaintiffs and the Defendant. The kitchen is and always has been a separate department at Mugs, separately managed from the "front of the house" or bar area. In fact, there were approximately four (4) employees who worked in the kitchen either as a cook, salad and fried food maker, food preparer and dishwasher.

#### a. Lema was a manager

The Court in Scott v. SSP Am., Inc. defined management to include activities such as :

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising

---

[2] In New York, an executive must be paid $543.75. 12 NYCRR § 142-2.14(i)(5).

> employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

Scott, 2011 U.S. Dist. LEXIS 32819, 23-24 (E.D.N.Y. Mar. 29, 2011) (citing 29 C.F.R. § 541.102 (2004)).

In Scott, plaintiff was found to be a manager, despite the fact that she testified that she worked over 90% of her time on nonexempt work. The Court noted that in deciding an employee's primary duty, although the percentage of time spent performing nonexempt work is an important consideration, it is not dispositive, "particularly when non-management duties are performed simultaneous to the supervision of employees or other management tasks and other factors support a finding that the employee's primary duty is managerial." Id. at 33-34 (citing Jones v. Va. Oil Co., 69 Fed. App'x 633, 637 (4th Cir. 2003) (citation and internal quotation marks omitted) (affirming district court grant of summary judgment where plaintiff claimed she spent "75-80 percent of her time carrying out basic line-worker tasks" because she "could simultaneously perform many of her management tasks"); see also Jackson v. Advance Auto Parts, Inc., 362 F. Supp. 2d 1323, 1328, 1335 (N.D. Ga. 2005) (granting summary judgment to defendant despite plaintiffs' testimony that they spent 90% of their time performing manual, non-exempt work because "[p]laintiffs acknowledged at their depositions that while they were selling to customers, operating the register, or performing other incidental tasks, they were also

still overseeing the other employees in the store and making sure that the store was operating properly")).

The Court also reiterated that, "one can still be 'managing' if one is in charge, even while physically doing something else," and, in such situations, "where the employee's management and non-management functions are [not] clearly severable," the amount of time a plaintiff spent performing exempt work is not accorded much weight. Scott, 2011 U.S. Dist. LEXIS 32819 at 35-36 (citing Donovan v. Burger King Corp., 672 F.2d 221, 226 (1st Cir. 1982); see also Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1113-14 (9th Cir. 2001) (affirming district court grant of summary judgment for employer where plaintiffs "spent ninety percent of their time on nonexempt tasks," holding that "[w]e do not presume that the executive exemption fails merely because the proportion of time spent on exempt managerial tasks is less than fifty percent, where, as here, managerial duties are packaged in employment with non-managerial tasks, and the management function cannot readily and economically be separated from the nonexempt tasks" (citations omitted)); Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982) (although plaintiff performed nonexempt tasks more than fifty percent of the time, management was still primary duty, in part because "much of the oversight of the operation can be carried out simultaneously with the performance of non-exempt work"); Mullins v. City of N.Y., 523 F. Supp. 2d 339, 357 (S.D.N.Y. 2007) ("[T]he fact that plaintiffs spend most of their shifts working alongside their subordinates and performing many of the same law enforcement tasks does not, in itself, dispose of the primary duty inquiry. Indeed, courts have found parties to be exempt executives even when they spend

up to ninety percent of their time performing non-exempt tasks." (citing Baldwin, 266 F.3d at 1113-14))).

At Mugs, Lema supervised the overall operation of the kitchen as admitted by himself, the owner of Mugs and all the other three (3) plaintiffs in this case. At his interview, Lema was told by Berestecki that "they need someone there to work and that was in charge of the kitchen." Moreover, Lema's responsibilities changed in 2003 further so that he "became the authority figure in the kitchen" in that if somebody needed to be replaced, he would find a new person and hire them. Specifically, Lema responsibility was "[t]o be in charge of the kitchen," was the "number one that did the cooking" and was "the first in line" in terms of the kitchen hierarchy.

Further, Lema was responsible for supervising the four (4) kitchen employees. Lema trained and supervised the other cooks and "prep" employees in the kitchen on how to make certain dishes and salads. The training included how to wash dishes and "cutting the chicken." More so, Lema trained Manuel Zumba ("Zumba") on how to make appetizers and when food preparation needed to be done. If an employee was not performing their job properly, Lema reported it to Berestecki.

Moreover, if any employee quit from Mugs or failed to show up for work, Lema reported it to Berestecki. Lema was responsible for finding a replacement and interviewing candidates. Lema recommended certain individuals which were hired, including Cesar, Christian, and Zumba. Lema also had authority to fire employees if they were not working out, and did in fact fire Cesar. Berestecki did not get involved at all.

Additionally, Plaintiff set the schedule and directed the workloads for the kitchen staff, created his own menu items and set menu pricing. In fact, Berestecki sat down with

Lema and asked him what he thought he could do about the menu. Lema had the power to change the menu without any authorization.

Lema was also responsible for any problems or issues that arose in the kitchen, including repairing kitchen equipment, or advising Berestecki that certain repairs or parts were necessary. If Lema fixed any minor repair, he gave the receipt to Berestecki to get reimbursed.

Moreover, Plaintiff was in charge of checking inventory for the purposes of reordering kitchen supplies and ingredients. He told Berestecki what supplies to get in the kitchen, and would make a list of whatever was missing to be ordered.

Further, Plaintiff was responsible for distributing the pay of the kitchen employees on a weekly basis. The owner of Mugs would leave envelopes containing each employee's pay for Plaintiff, who then distributed the pay.

Lastly, Plaintiff's job duties included hiring, firing, and disciplining employees or the recommendation of such actions. He reported to the owner that he was going to hire certain employees, including dishwashers and other employees, and the owner was not involved in the hiring process for kitchen employees. Plaintiff then set those employees' schedule and was responsible for paying them. Plaintiff fired employees, such as Cesar.

Since Lema hired and fired kitchen staff, set the schedule for kitchen staff, trained kitchen staff, and was responsible for paying kitchen staff, *inter alia*, it is clear that he was a manager at Mugs.

### b. The Kitchen is a customarily recognized department at Mugs

The U.S. regulations define "a customarily recognized department or subdivision as a unit that must have a permanent status and a continuing function, as opposed to a

9

mere collection of employees assigned from time to time to a specific job or series of jobs." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 560 (2d Cir. 2012) (citing 29 C.F.R. § 541.103(a)) (internal quotations omitted).[3]

In this case, the kitchen is a separate and distinct department at Mugs and qualifies as a department under the FLSA. First, the kitchen is located in a stationary location dedicated exclusively to the preparation of food at Mugs. The food preparation is performed in the kitchen which is a separate area at Mugs apart from the bar and customer areas. The actual service of food takes place in separate counters and tables in the bar and customer area. Moreover, none of the kitchen employees were employed to perform any duties at the bar or in the customer seating areas. Moreover, there was a distinct and separate management for the "front of the house" (bar area) and the "back of the house" (kitchen).

Accordingly, it is clear that the second prong of the executive exemption has been satisfied.

### iii. **Lema directed the work of at least two or more other full-time employees**

In order to meet the exemption, an individual must direct the work of at least two (2) full-time employees. Gordon v. Rite Aid Corp., 2012 U.S. Dist. LEXIS 54071 (S.D.N.Y. Mar. 9, 2012) (citing 29 C.F.R. §541.100(a)(3)). That is, an employee must

---

[3] The regulations provide the illustrative example of "a large employer's human resources department," which "might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function." Id. However, the regulations go on to explain that the concept of a customarily recognized department or subdivision is flexible: each unit "need not be physically within the employer's establishment and may move from place to place," and merely because an "employee works in more than one location does not invalidate the exemption if other factors show that the employee is actually in charge of a recognized unit with a continuing function in the organization." Id. § 541.103(c). In addition, "[c]ontinuity of the same subordinate personnel is not essential to the existence of recognized unit with a continuing function": An otherwise exempt employee will not lose the exemption merely because the employee draws and supervises workers from a pool or supervises a team of workers drawn from other recognized units, if other factors are present that indicate that the employee is in charge of a recognized unit with a continuing function. Id. § 541.103(d).

10

direct at least 80 hours of subordinate work a week to be exempt. Rubery v. Buth-Na-Bodhaige, Inc., 470 F. Supp. 2d 273, 277 (W.D.N.Y. 2007); Perez v. RadioShack Corp., 386 F.Supp.2d 979, 989 (N.D. Ill. 2005).

In the instant case, the facts clearly establish that Lema was the manager of the kitchen and managed the work of, at any given time, three (3) or four (4) other kitchen employees.

Moreover, Lema trained new employees including the "prep guy", the dishwasher Christian Pineda, and "salad/fry guy", while regularly explained job duties and instructed other employees. Further, depending on the day, either three (3) or four (4) employees would be working in the kitchen.

Based on the above, the facts unequivocally demonstrate that Lema managed the work of substantially more than two (2) employees.

### iv. Lema had authority to hire or fire employees

The final prong of the executive exemption test is whether Lema was an employee who had "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight." Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, 47-48 (E.D.N.Y. Mar. 29, 2011) (citing 29 C.F.R. § 541.100); see also Gordon v. Rite Aid Corp., 2012 U.S. Dist. LEXIS 54071, 30 (S.D.N.Y. Mar. 9, 2012) (citing 29 C.F.R. §541.100(a)(4)). Further, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee

11

does not have authority to make the ultimate decision as to the employee's change in status." Scott, 2011 U.S. Dist. LEXIS 32819 at 47-48 (citing 29 C.F.R. § 541.105).

Here, it is clear that Lema had the authority to hire and fire employees and/or recommend the hiring and firing of employees in the kitchen. In fact, his recommendations were always followed. In fact, one of his primary job duties was to make sure the kitchen was properly staffed. Additionally, Lema reported when employees failed to show up for work and that individual would be replaced by the Lema. Moreover, when employees quit, Lema would find replacements. Specifically, after 2006, Lema hired Cesar, Christian Pineda, and Manuel Zumba. In 2011, Lema told Berestecki he had to hire a new person. Lema told Berestecki that he had two (2) college students to split the responsibilities and Berestecki approved Lema's hiring recommendation of splitting the responsibilities between two (2) persons. Further, when other employees, including Gonzalo Sumba ("Sumba") found individuals to work in the kitchen, they had to speak with Lema, who in turn spoke with Berestecki and recommended hiring those individuals. Without exception, all of Lema's hiring recommendations were followed.

Lema also had the authority to fire and did, in fact, fire Cesar since he was not working out because Lema had problems with him. Christian Pineda was also told by Lema that he was fired at Mugs. If Lema wanted to replace somebody in the kitchen and had a replacement lined up, he was permitted to do so.

Plainly, the chef/manager could do the hiring for the kitchen. Further, it was Lema that interviewed the candidates for the kitchen positions. The owner had no involvement in hiring kitchen employees

Specifically, Lema hired Sumba and Christian Pineda since Berestecki instructed Lema to find replacements and pay them. After 2006, Lema also hired Cesar and Manuel Sumba. In 2011, Lema hired two (2) college students to split dishwashing responsibilities, after advising Berestecki of the necessity to do so.

Furthermore, Lema made recommendations as to whether people were doing their jobs and if they were working out. In 2003, "he pretty much became the authority figure in the kitchen" in that if somebody needed to be replaced, Lema would find them and hire them. In fact, Lema fired Cesar a prep person, since Cesar was not working out and Lema had problems with him. It was Lema who advised the other three (3) plaintiffs that they had been terminated.

Based on the above, Lema had the power to hire and fire employees and/or recommend the hiring and firing of employees at Mugs.

## CONCLUSION

Courts have held that the determination of whether an employee is exempt from the overtime requirements of the FLSA is a "highly fact intensive inquiry that must be made on a case-by-case basis in light of the totality of the circumstances." Johnson v. Big Lots Stores, Inc., 604 F. Supp. 2d 903, 908 (E.D. La. 2009) (citations omitted); see also Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008) ("employment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances" (citation omitted)). "[D]isputes regarding the nature of an employee's duties are questions of fact." Indergit v. Rite Aid Corp., No. 08-CV-11364 (PGG), 2010 U.S. Dist. LEXIS 32322, at *14-15 (S.D.N.Y. Mar. 31, 2010) (citation and internal quotation marks omitted); Icicle Seafoods, Inc. v.

13

Worthington, 475 U.S. 709, 714, 106 S. Ct. 1527, 89 L. Ed. 2d 739 (1986) ("The question of how the respondents spent their working time . . . is a question of fact.")).  In this case, there are no issues of material fact on every essential element of Lema's exempt status.

Accordingly, Defendants' motion for partial summary judge should be granted.

WHEREFORE, Defendants Mugs Ale House Bar and Edward Berestecki, respectfully request that partial motion for summary judgment be granted.

Dated: October 25, 2013

                         **MILMAN LABUDA LAW GROUP PLLC**

                         By:   /s/Joseph M. Labuda, Esq.
                                Joseph M. Labuda, Esq.
                                Ira D. Wincott, Esq.