UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

FLAVIO LEMA, MANUEL ZUMBA,
GONZALO SUMBA, and CHRISTIAN PINEDA,

              Plaintiffs,

                    **<u>SUMMARY ORDER</u>**
      v.                   12-CV-2182 (PKC)

MUGS ALE HOUSE BAR and
EDWARD BERESTECKI,

              Defendants.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Defendants Mugs Ale House Bar ("Mugs") and its owner, Edward Berestecki, presently move for partial summary judgment, pursuant to Federal Rule of Civil Procedure ("FRCP") 56, with respect to Plaintiff Flavio Lema. The only basis for Defendants' motion is that Lema is not subject to the overtime pay provisions of the Fair Labor Standards Act ("FLSA") in his employment at Mugs because Lema is or was employed in an executive capacity. (Dkt. 74 at i.) Because virtually every material fact regarding the issue of whether Lema is an exempt employee under FLSA remains in dispute, Defendants' motion must be denied.

## BACKGROUND

      The following facts relevant to resolution of the present motion are taken from Defendants' statement of material facts pursuant to Local Civil Rule 56.1 ("Rule 56.1 Statement") ("Def. St.") and Plaintiff's Rule 56.1 Statement ("Pl. St."). The Court, as it must, construes these facts in the light most favorable to Plaintiff, the non-moving party. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003).

Mugs Ale House is a bar and restaurant located in Brooklyn, New York. (Def. St. ¶ 2.) Berestecki, through a corporate entity, is the 100% owner of Mugs. (Def. St. ¶ 3.) Berestecki hired Lema in or about 1999 or 2000 to work in the Mugs kitchen. (Pl. St. ¶¶ 5–6.)

The parties agree on little else, which illustrates the extent of the factual disputes inherent in Defendants' present motion for summary judgment. At the core of the parties' dispute is whether Lema functioned as the manager of the Mugs kitchen or whether he was a non-managerial member of the Mugs staff. According to Lema, when he was first hired his primary duty was to design a food menu for the bar and to be "the chef." (Pl. St. ¶ 6.) Meanwhile, Defendants maintain Lema was hired to be "in charge of everything" in connection with the kitchen. (Def. St. ¶ 5.) Berestecki told Lema during his hiring interview that the bar "need[s] someone there to work and that was in charge of the kitchen." (Pl. St. ¶ 7.) According to Berestecki's deposition testimony, despite originally hiring Lema as "the chef," beginning in 2003, "Lema was in charge of the kitchen." (Def. St. ¶ 8.) Specifically, Defendants claim that:

> [Lema's] primary duties became running the kitchen, making sure it is staffed, and making sure they had inventory. (See Exhibit A, Berestecki Dep. p. 114). That was when he started to "run the kitchen" and before that he was the chef, and came up with menu items and specials cooked. (See Exhibit A, Berestecki Dep. p. 109). Lema made recommendations as to whether people were doing their jobs and if they were working out. (See Exhibit A, Berestecki Dep. p. 109). In 2003, Lema's responsibilities changed in that he "became the authority figure in the kitchen" in that if somebody needed to be replaced, Lema would find a new person and hire them. (See Exhibit A, Berestecki Dep. pps. 109-110).

(Def. St. ¶ 8.) Lema disputes this, stating that he was not in charge of the kitchen; that there is no evidence he hired, fired, or introduced new employees to Mugs; that he did not assign tasks or distribute work assignments; and that he did not evaluate employees for promotion. (Pl. St. ¶ 8.)

As discussed more fully below, there are myriad disputed issues of fact in connection with whether Lema's role at Mugs was managerial or non-managerial, and, accordingly, summary judgment must be denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.*

In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry*, 336 F.3d at 137. The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quotations and citations omitted). That party must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted).

## DISCUSSION

I.     FLSA Overtime Claims

Lema's amended complaint alleges that he was improperly denied overtime pay. (Dkt. 8 at 8–10.) FLSA provides that, with respect to such so-called "overtime claims":

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). In short, eligible employees who work in excess of 40 hours each workweek must be paid at an "overtime rate" for hours worked in excess of 40 hours. "To succeed on a[] FLSA overtime claim, plaintiff must show that (1) he was an employee who was eligible for overtime (not exempt from [FLSA]'s overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated." *Kleitman v. MSCK Mayain Olam Habba Inc.*, 11-CV-2817, 2013 WL 4495671, at *4 (E.D.N.Y. Aug. 20, 2013) (citing *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009)).

## II.    Executive Exemption

Certain employees are exempt from FLSA's overtime pay requirements. FLSA's overtime provisions do not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Because the executive exemption is an affirmative defense to overtime claims, the defendant-employer bears the burden of proving that a plaintiff was employed in an exempt capacity. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974). Moreover, "because the FLSA is a remedial act, its exemptions, such as the 'bona fide executive' exemption[,] . . . are to be narrowly construed." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991). The exemption question under FLSA is a mixed question of law and fact. *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) (citing *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521 (2d Cir. 1998)). "'The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of

law . . . .'" *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting

*Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).

The United States Department of Labor has set forth the following requirements for the

executive exemption:

> (1) [The employee is] [c]ompensated on a salary basis at a rate of not less than $455 per week (or $ 380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

> (2) [The employee's] primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3) [The employee] customarily and regularly directs the work of two or more other employees; *and*;

> (4) [The employee] has the authority to hire or fire other employees[,] or [the employee's] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (emphasis added).  As to the first requirement, the parties do not dispute,

for purposes of the present motion, that Lema was compensated at a salary rate of not less than

$455 per week.  (Dkt. 76 at 9 n.4.)  However, there is a genuine issue of material fact, requiring a

trial, as to whether Plaintiff's employment satisfies the other three requirements.  The Court

addresses each, in turn.

a.  Primary Duty

Department of Labor regulations define an employee's "primary duty" as follows:

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty *must be based on all the facts in a particular case*, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt

duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

(c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700 (emphasis added). Consideration of the factors pertaining to an employee's primary duty "is a highly fact-intensive inquiry, to be made on a case-by-case basis in light of the totality of the circumstances." *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010) (citation and quotations omitted).

Duties qualifying as "management" include, but are not limited to:

activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; . . . providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Here, considering the relevant regulations and authorities set forth above, there are numerous genuine issues of material fact as to Lema's primary duties and whether they qualified as managerial for purposes of FLSA. Indeed, virtually every material fact on this issue remains in dispute.

As noted above, Berestecki told Lema when he was first hired in 1999 or 2000 that his "primary duty" was to create a menu and to serve as "the chef." (Def. St. ¶ 6.) According to Berestecki, Lema's primary duties changed in 2003, when Lema's duties became "running the kitchen, making sure it is staffed, and making sure they had inventory." (Def. St. ¶ 8.) Lema disputes that he was in charge of the kitchen, noting the lack of evidence that he hired or fired employees and stating that Berestecki maintained ultimate authority when it came to the menu and to purchasing food ingredients and checking inventory. (Pl. St. ¶ 8.) Lema also testified at his deposition that he was only a "line cook." (Pl. St. ¶ 10.) Moreover, co-Plaintiffs Gonzalo Sumba and Christian Pineda testified at their depositions that Lema was "number one that did the cooking," "the first in line" in the kitchen, and "head cook." (Pl. St. ¶¶ 10, 19.)

At the very least, the evolving nature of Plaintiff's primary duties, as acknowledged by Berestecki, raises genuine issues of fact as to when Lema took over control of the kitchen, if indeed he ever did, and the extent to which Lema was free of Berestecki's supervision, if he ever was. *See* 29 C.F.R. 541.700. Furthermore, even assuming that Lema was the "head cook," that fact does not establish his control over the entire kitchen or its staff, and could even be viewed as undercutting the conclusion that Lema's *primary* duties were as a kitchen manager.

Perhaps most critical to Defendants' motion for summary judgment is the lack of evidence regarding the *amount* of time Lema allegedly spent performing managerial functions,

*i.e.* "exempt work." The relevant regulations provide that "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(b). *See also Mullins v. City of New York*, 653 F.3d 104, 106–107 (2d Cir. 2011) (citing 29 C.F.R. § 541.700(a)) ("Factors to consider when determining the primary duty of an employee include . . . the amount of time spent performing exempt work."). There is no doubt that Lema performed some of the functions typical of a manager, and Defendants' briefing purports to set forth all of the management duties with which Lema was charged. However, despite stating that Lema worked a total of 55 hours per week, Defendants in no way indicate what proportion of Lema's time was spent performing which managerial functions. Such information is critical to determining to what extent Lema's performance of managerial functions was his "primary duty" at Mugs, especially given that Lema's day-to-day responsibilities as "head cook" included "cook[ing], prepar[ing] food, [and] mak[ing] sure dishes are washed," in addition to the managerial tasks Defendants proffer. (Def. St. ¶¶ 10, 19, 28.) Although the amount of time spent on non-exempt work is not dispositive, in the absence of evidence demonstrating how much time Lema spent performing exempt work, Defendants cannot carry their burden to demonstrate that there is no genuine issue of fact as to Lema's primary duty at Mugs.[1]

For these reasons, there are genuine issues of fact as to whether Lema's "primary duty" was management of the Mugs kitchen. Although the genuine issues of fact with respect to Lema's primary duty alone preclude summary judgment, Defendants' motion also is infirm for

---

[1]  *See* 29 C.F.R. § 541.700(b) ("Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work.").

failing to demonstrate that there is no genuine issue of fact with respect to the other two disputed prongs of the "exemption question."

      b.  <u>Customarily and Regularly Directs the Work of Two or More Other Employees</u>

There also is a dispute as to whether Lema directed the work of two or more employees, as required to qualify for the bona fide executive exemption.  Defendants claim that Lema trained new employees and "regularly explained job duties and instructed other employees." (Def. St. ¶ 23.)  On the other hand, Lema testified that he did not regularly train employees and that Sumba did most of the training, and trained at least two other employees, Zumba and Pineda.  (Pl. St. ¶ 23.)  The parties also dispute numerous other aspects of Lema's work duties vis-à-vis other kitchen employees, including whether Lema reported poor work performance to superiors (Pl. St. ¶ 27), set other employee's work schedules (Pl. St. ¶¶ 12, 46), was responsible for paying employees (Pl. St. ¶ 50), and instructed Zumba on how to prepare various foods when Sumba was absent, (Pl. St. ¶ 9).

These disputed issues, taken together and in the totality of the circumstances, raise genuine issues as to whether Lema "customarily and regularly" directed the work of two or more employees in the Mugs kitchen.  *See Callari v. Blackman Plumbing Supply, Inc.*, --- F. Supp. 2d ----, 2013 WL 6795911, at *20 (E.D.N.Y. Dec. 19, 2013) (citing *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 527 (S.D.N.Y. 2013)).  Thus, summary judgment cannot be granted because the extent of Plaintiff's authority over the other employees in the Mugs kitchen is plainly in dispute.

c. <u>Authority to Hire and Fire, or Personnel Recommendations are Given Particular Weight</u>

The parties dispute whether Lema had the authority to hire or fire employees on his own and whether he, in fact, hired or fired any employees. (Pl. St. ¶¶ 35–37, 40–41.)[2] The parties also dispute whether Lema's recommendations as to personnel decisions were "given particular weight." *Solis v. SCA Restaurant Corp.*, 938 F. Supp. 2d 380, 396 (E.D.N.Y. 2013) (employee must "have either 'the authority to hire or fire other employees' or whose suggestions on 'hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'") (citing 29 C.F.R. §§ 541.100(a)(2–4)).

With respect to whether Lema's personnel suggestions were given particular weight, Defendants state that "Lema made recommendations as to whether people were doing their jobs and if they were working out." (Def. St. ¶ 8.) However, Defendants fail to articulate whether Lema's recommendations, if he made them, were given any particular weight, or even considered at all. Lema counters that he did not evaluate employees for the purpose of promotion. (Pl. St. ¶ 8.) The record ultimately is inconclusive as to the extent to which Lema's personnel recommendations, if he made them, were considered or given special weight.

With respect to Lema's authority to hire or fire employees, Defendants assert that Lema hired one employee, "Cesar," for the kitchen, had the authority to fire employees, and indeed fired at least one employee. (Dkt. 74 at 12.)[3] Lema, however, asserts that he did not hire, fire, or recruit employees, and denies hiring Cesar. (Dkt. 76 at 20; Dkt. 78-3 at 58, 60; Dkt. 77 ¶ 13.)

---

[2] Beginning with paragraph 32 of Plaintiff's 56.1 Statement, Plaintiff's paragraphs are off by one number due to a drafting error. All citations to Plaintiff's 56.1 Statement beyond paragraph 32 are to the cited paragraph, but correspond to the paragraph numbered one lower in Defendant's 56.1 Statement. (*See* Dkt. 75 at 8 ¶ 31.)

[3] The only support for that proposition is the deposition of Berestecki. (Def. St. ¶ 39.)

Other Plaintiffs testified that they were hired by Sumba, not Lema. (Dkt. 76 at 20 & Dkt. 78-3 at 58–60; Dkt. 78-6 at. 9; Dkt. 78-5 at 30; Dkt. 78-4 at 17–18.) In addition, Defendants' arguments in their reply brief suggest that Lema did not have hiring or firing authority and that, at most, he may have made recommendations to Berestecki on whether to hire or fire employees. (*See* Dkt. 80 at 14 (it was Lema's responsibility "to tell [Berestecki], the owner, that somebo[d]y was not doing their job properly; there were "many times that [Lema] told Berestecki he had a problem with somebody not coming to work;" "when an employee quit from Mugs, Lema would try to find a replacement;" and "Lema would recommend that certain individuals be hired at Mugs.") (quotation marks omitted)). However, as previously discussed, Defendants entirely fail to point to any evidence suggesting that Lema's recommendations were followed or given any "special weight." Furthermore, Defendants arguments on this issue strongly suggest that Lema did not have hiring or firing authority and that all employment decisions rested with Berestecki.

Accordingly, Defendants also fail to demonstrate that there is no genuine issue of fact with respect to the fourth prong of the executive exception inquiry, and summary judgment must be denied on that basis.

III.   Plaintiff's NYLL Claims

Defendants do not expressly move for summary judgment as to Plaintiff's claims under the New York Labor Law ("NYLL"). Nevertheless, the same analysis applies to FLSA and NYLL claims. *See, e.g.*, *Sethi v. Narod*, 974 F. Supp. 2d 162, 183 (E.D.N.Y. 2013) (citing cases); *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012) ("Like the FLSA, the NYLL mandates overtime pay and applies the same exemptions as the FLSA.") (citation and quotations omitted). Therefore, for the same reasons as set forth above, summary judgment is denied as to Plaintiff's NYLL claims.

*CONCLUSION*

For the reasons stated above, there remain genuine disputes of material of fact, requiring a trial, as to whether Lema qualifies as an exempt employee under FLSA's overtime provisions. Accordingly, Defendants have not demonstrated that they are entitled to summary judgment as a matter of law, and their motion is denied in its entirety.

SO ORDERED:

   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: June 26, 2014
      Brooklyn, New York